IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF TEXAS

TYLER DIVISION

MICHAEL DAVID, #648558                    §

VS.                                       §                    CIVIL ACTION NO. 6:06cv221

GARY JOHNSON, ET AL.                      §

MEMORANDUM OPINION AND
ORDER OF DISMISSAL

Plaintiff Michael David, an inmate previously confined at the Michael Unit of the Texas

prison system, proceeding *pro se* and *in forma pauperis*, filed the above-styled and numbered civil

rights lawsuit pursuant to 42 U.S.C. § 1983.  The complaint was transferred to the undersigned

pursuant to 28 U.S.C. § 636(c).

The original complaint was filed on May 10, 2006.  After reviewing the complaint, the Court

decided to conduct an evidentiary hearing, consistent with *Spears v. McCotter*, 766 F.2d 179 (5th

Cir. 1985), to consider the Plaintiff's claims.  The hearing was conducted on September 21, 2006.

Regional Grievance Coordinator Chip Satterwhite and Nurse Kathy Gray attended the hearing in

order to answer any questions the Court may have concerning prison policy or the Plaintiff's records.

Only sworn testimony and authenticated records were accepted during the *Spears* hearing,

and the evidence submitted by prison personnel was considered by the Court only to the extent that

it does not contradict the inherently plausible and credible evidence offered by the Plaintiff.  *Vernado

v. Collins*, 920 F.2d 320, 321 (5th Cir. 1991).  The Plaintiff gave the Court permission to review his

prison records.

1

The Plaintiff testified that he arrived at the Michael Unit in September, 2004.  He had previously been confined at the McConnell Unit.  He experienced problems there and asked to be placed in the protective custody section of administrative segregation for his own safety.  The Warden and Unit Classification Committee ("UCC") at the McConnell Unit recommended that the request be granted.  The State Classification Committee ("SCC") turned down the request.  The SCC also turned down a recommendation to transfer the Plaintiff.  The Plaintiff is suing the following members of the SCC: former Executive Director Gary Johnson, former TDCJ-CID Director Doug Dretke, State Classification Director Pamela Williams, SCC Member Bill Cheatham, and State Classification Member Kelly Strong.  He also testified that he wrote to Johnson and Dretke for help, but they did not take any corrective action.

The Plaintiff testified that he filed a lawsuit in the Southern District of Texas over the SCC's decision in *David v. TDCJ-ID*, No. 2:04cv299.  The Defendants in that case included Pamela Williams and Bill Cheatham.  The Plaintiff noted that he was transferred to the Michael Unit days after the Defendants were served in that case.  On the way to the Michael Unit, he was attacked by inmates at the Darrington Unit in Brazoria County.

The Plaintiff testified that he went before the Michael Unit UCC upon his arrival at the unit.  His request to be placed in protective custody was again denied, although he was assigned to safekeeping.  The Plaintiff testified that safekeeping did not provide him with sufficient protection.  He still had to come into contact with general population inmates in the chow hall, infirmary, commissary and the pill line.  He noted that protective custody inmates never come into contact with other inmates.  Because he was assigned to safekeeping, he came into contact with general population inmates, who subjected him to abuse.

On February 24, 2005, he was physically and sexually assaulted on a transport bus shortly after leaving the Michael Unit on his way to the Huntsville Unit.  He blamed the SCC for the attack for putting him in a position where he could be attacked.  The Plaintiff testified that the incident lasted for fifteen minutes, although the actual attack lasted for only one and one-half minutes.  The Plaintiff testified that he was away from the Michael Unit for two months.  He went before the UCC again upon his return to the Michael Unit.  Warden Thompson again denied his request for protective custody in light of the decision by the SCC.  Warden Thompson said it would be fruitless to seek protective custody from the SCC again.  The Plaintiff said he again feared for his safety while he was confined in safekeeping at the Michael Unit.

The Plaintiff remained at the Michael Unit until July 27, 2006.  He was transferred to the Price Daniel Unit as a result of a settlement in the Southern District case.  The records from Civil Action No. 2:04cv299 do not discuss the terms of the settlement; instead, the order dismissing the case noted that it was a joint motion to dismiss and that the case was dismissed with prejudice.  The Plaintiff testified that he is relatively safe at the Price Daniel Unit and that he is dropping his request for injunctive relief to be placed in protective custody.  He still wants injunctive relief prohibiting prison officials from placing him on a bus with general population inmates.

The Plaintiff testified that he sued Officer Brown for spraying him with pepper spray on December 30, 2004.  Officer Brown and another inmate were having an argument.  Officer Brown ultimately sprayed that inmate with the pepper spray, but some of the spray drifted onto other inmates, including the Plaintiff.  The Plaintiff testified he then had an asthma attack.  Supervisory officers were called.  All of the inmates in the housing area were taken outside and checked by medical personnel.  The Plaintiff further testified that Officer Brown did not have any reason to spray

the inmate.  The confrontation consisted of nothing more than a verbal argument, and the inmate had turned away by the time he was sprayed.

The Plaintiff testified that he sued Guy Smith for denying his Step 2 grievances.  He noted that Guy Smith normally responded to grievances about medical issues.  Smith denied a grievance about safekeeping inmates having to stand outside for a pill line during the winter months from December, 2004 through February, 2005.  The area was covered, but it was outside where it was cold and breezy.

The Plaintiff testified that he sued Assistant Regional Director Rhoda Odom for denying his Step 2 grievances.  She denied a grievance about an air vent being turned off during the summer in his housing area.  He was told that the fan was turned off since it was broken and a part had been ordered.  He sued Warden Pratt for turning down his Step 1 grievance over the issue.

The Plaintiff next complained about being placed in a metal cage while waiting to see medical personnel at the infirmary.  He was placed in a cage with general population inmates, who taunted him and called him names.  He sued Major Cook for denying his Step 1 grievance over the issue.  He sued Guy Smith for denying his Step 2grievance.

The Plaintiff testified that he named Christina Crain, the Chairperson of the Texas Board of Criminal Justice, because of a policy change regarding mail to and from state and federal agencies.  Such mail is no longer treated as legal mail, thus the letters cannot be sealed.  Legal mail to attorneys and courts may still be sealed.

Regional Grievance Coordinator Chip Satterwhite testified under oath that the change in mail policy was the result of the anthrax scare.  He testified that the Plaintiff exhausted his administrative remedies only against Officer Brown.  He filed Step 1 and Step 2 grievances regarding some of the

4

incidents, but the only person named in both a Step 1 and Step 2 grievance was Officer Brown.  The Plaintiff testified that he filed Step 1 and Step 2 grievances with respect to all of his claims.  He added names of people who denied Step 1 and Step 2 grievances.  For example, when the Warden denied his Step 1 grievance about the pill line being outside, he added him in the Step 2 grievance.

The Plaintiff testified that he has a number of illness, including asthma, high blood pressure, chronic lung disease, colitis and spine problems.  Standing in the cold in the pill line exacerbated such problems.  He testified that he had sick call requests for illnesses related to the cold dated February 4, 2005; January 19, 2005; January 16, 2005; and December 29, 2004.

Nurse Gray testified under oath that she found sick call requests dated September 16, 2005, and December 28, 2005.  She did not find any medical entries about Officer Brown spraying the Plaintiff.

The Plaintiff gave the Court permission to review his prison records that were submitted at the *Spears* hearing.  The classification records reveal that the UCC routinely considered the Plaintiff's claims that his life was in danger.  On July 29, 2003, while the Plaintiff was still at the McConnell Unit, he was reviewed by the UCC after a life endangerment study was conducted.  The UCC recommended a unit transfer.  An entry dated August 3, 2003, specified that the SCC denied the transfer.  On April 29, 2004, another life endangerment study was recorded and the Plaintiff's request for help was denied due to insufficient evidence.  On May 7, 2004, a life endangerment request was denied due to no evidence.  On July 22, 2004, the Plaintiff was placed in transit while another life endangerment study was conducted.  On July 28, 2004, the Plaintiff's requests were denied due to no new additional evidence.  On August 10, 2004, a life endangerment study found that there was no new evidence and a request for a unit transfer was denied.  On August 26, 2004,

5

a life endangerment study denied relief because there was no new evidence.  The first entry made at the Michael Unit was on September 7, 2004.  On September 30, 2004, an entry noted no life endangerment issues at the Michael Unit and that the Plaintiff's problems were at the McConnell Unit.  On October 26, 2004, the Michael Unit UCC denied a life endangerment request noting that the Plaintiff had merely been approached and that he could not identify any offenders as the source of threats.  On April 18, 2005, the Plaintiff returned to the Michael Unit from the Diagnostic Unit and was assigned to safekeeping.  Another life endangerment request was denied on May 11, 2005.  Other life endangerment studies were recorded on April 21, 2006, and April 28, 2006.  The first entry at the Price Daniel Unit was dated July 19, 2006.

The facts as alleged raise several claims.  The primary claim concerns life endangerment.  The Eighth Amendment affords prisoners protection against injury at the hands of other inmates.  *Smith v. Wade*, 461 U.S. 30 (1983);  *Johnston v. Lucas*, 786 F.2d 1254, 1259 (5th Cir. 1986).  "It is not, however, every injury suffered by one prisoner at the hands of another that translates into constitutional liability for prison officials responsible for the victim's safety."  *Farmer v. Brennan*, 511 U.S. 825, 834 (1994).  Instead, the standard to employ is whether prison officials were "deliberately indifferent" to the safety needs of an inmate.  *Id.*; *Cantu v. Jones*, 293 F.3d 839, 844 (5th Cir. 2002).  "[A] prison official cannot be found liable under the Eighth Amendment . . . unless the official knows of and disregards an excessive risk to inmate health or safety; . . .  the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference."  *Id.* at 837.

In the present case, the Plaintiff's claims that his life was in danger were routinely investigated.  As a result of such investigations, the Plaintiff was placed in safekeeping, a relatively secure part of the general population.  However, his request to be placed in protective custody, a part

6

of administrative segregation was denied.  It is clear that classification officials were responsive to the Plaintiff's fears for his safety and that they made classification decisions that were deemed appropriate.  A prisoner does not have a basis for a civil rights claim for failure to protect simply because he disagrees with the classification decision made by classification officials.  *Neals v. Norwood*, 59 F.3d 530 (5th Cir. 1995).  The Plaintiff has not alleged facts supporting a claim that anyone was deliberately indifferent to his safety.  At most, he has merely shown that he disagrees with safety decisions made by officials.  The Plaintiff's complaints about the decisions made by classification officials fail to state a claim upon which relief may be granted and are frivolous in that they lack any basis in law and fact.  Such claims should be dismissed pursuant to 28 U.S.C. § 1915A(b)(1).

The Plaintiff's complaints against the SCC should be dismissed for the additional reason that he already litigated his claims against the state classification officials in the Southern District of Texas in *David v. TDCJ-ID*, No. 2:04cv299.  He reached a settlement and the case was dismissed with prejudice.  He may not renew his claims against them in a new lawsuit.

The Court notes that the Plaintiff included a claim about matters that occurred at the Darrington Unit.  The Darrington Unit is located in Brazoria County, which is in the Southern District of Texas, Galveston Division.  28 U.S.C. § 124(b)(1).  Any complaints that the Plaintiff may have about matters that occurred at the Darrington Unit must be filed in Galveston, as opposed to this Court.

The Plaintiff's remaining claims present an exhaustion problem.  The law governing the exhaustion of administrative remedies is 42 U.S.C. § 1997e.  In 1996, Congress enacted the Prison Litigation Reform Act, which mandated that no action shall be brought by a prisoner "until such administrative remedies as are available are exhausted."  42 U.S.C. § 1997e(a).  In 2001, the

Supreme Court  reviewed the current exhaustion requirement and unanimously concluded that inmates must exhaust their administrative remedies before proceeding to federal court. *Booth v. Churner*, 532 U.S. 731 (2001). *See also Wright v. Hollingsworth*, 260 F.3d 357 (5th Cir. 2001).  The Supreme Court subsequently held that exhaustion is mandatory and is required for all actions brought by prisoners. *Porter v. Nussle*, 534 U.S. 516, 524 (2002).  Most recently, the Supreme Court reiterated that exhaustion is mandatory and will not be excused when an inmate fails to timely exhaust his administrative remedies. *Woodford v. Ngo*, 126 S.Ct. 2378 (2006).  Litigants must exhaust both the subject matter of their claims and against each individual defendant.  The Plaintiff's grievance records reveal that he filed Step 1 and 2 grievances about claims, but the only person that was included in both the Step 1 and Step 2 grievances was Officer Brown.  The Plaintiff did not file Step 1 and Step 2 grievances against all of his Defendants regarding all of his claims.  He  failed to exhaust his claims against any of the Defendants other than Officer Brown.  Consequently, the Plaintiff's claims against all of the Defendants except for Officer Brown should be dismissed pursuant to 42 U.S.C. § 1997e.

The Court would further note that the Plaintiff does not have a basis for a civil rights lawsuit against officials simply because they denied his grievances. *Jackson v. Cain*, 864 F.2d 1235, 1248-51 (5th Cir. 1989).  The Plaintiff does not have a basis for a civil rights lawsuit against Guy Smith, Rhoda Odom, Warden Pratt or Major Cook just because they turned down his grievances.

The Plaintiff's claims against Officer Brown involve allegations of excessive use of force. The Supreme Court has emphasized that the core judicial inquiry in an Eighth Amendment excessive use of force claim is "whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." *Hudson v. McMillian*, 503 U.S. 1, 7 (1992).  An excessive use of force claim has both subjective and objective components. *Id.* at 8.

8

In other words, there is the issue of whether the officials acted with a "sufficiently culpable state of mind" and if the alleged wrongdoing was objectively "harmful enough" to establish a constitutional violation. *Id.* A claimant must allege and prove there was an "unnecessary and wanton infliction of pain." *Id.* at 5. In deciding whether the use of force was wanton or unnecessary, a court may consider "the need for application of force, the relationship between that need and the amount of force used, the threat reasonably perceived by the responsible officials, and any efforts made to temper the severity of a forceful response." *Id.* at 7. (internal quotation and citation omitted). The absence of a serious injury is relevant to but not dispositive of the excessive force claim. *Id.*

The Supreme Court added the following caveat concerning the nature of the force used in a given situation:

> That is not to say that every malevolent touch by a prison guard gives rise to a federal cause of action. *See Johnson v. Glick*, 481 F.2d, at 1033 ("Not every push or shove, even if it may later seem unnecessary in the peace of a judge's chambers, violates a prisoner's constitutional rights"). The Eighth Amendment's prohibition of "cruel and unusual" punishment necessarily excludes from constitutional recognition de minimis uses of physical force, provided that the use of force is not of a sort "repugnant to the conscience of mankind."

*Hudson v. McMillian*, 503 U.S. at 9-10.

The facts of the Plaintiff's excessive use of force claim involve some of the pepper spray aimed at another inmate drifting on the Plaintiff and making him experience an asthma attack. The Fifth Circuit considered the use of chemical agents, such as pepper spray, in the context of excessive use of force claims in *Bladwin v. Stalder*, 137 F.3d 836 (5th Cir. 1998). The case involved prison officials using pepper mace to quell a disturbance on a bus. The trial court found that the inmate suffered only minor injuries due to the use of pepper spray; nonetheless, the trial court found that officer's actions violated the Eighth Amendment. The Fifth Circuit reversed. Using the basic *Hudson* standards, the Fifth Circuit held that the trial court erred in finding that the two second use

of mace, including not allowing immediate washing, was not a *good faith effort* to maintain or restore discipline. *Id.* at 841. The Fifth Circuit found that there was no evidence that the officer acted with a malicious or sadistic intent. The Fifth Circuit again discussed the use of a chemical agent against an inmate in *Davis v. Cannon*, 91 Fed. Appx. 327 (5th Cir. 2004). The Fifth Circuit held that the use of the chemical agent after the inmate refused to obey orders, which did not result in any physical injuries, was not excessive. *Id.* at 329 (citing *Baldwin*, 137 F.3d at 840-41).

In the present case, Officer Brown was not concerned with the Plaintiff. He sprayed another inmate as a result of an argument. The facts as alleged and developed do not give rise to an inference that Officer Brown acted maliciously and sadistically towards the Plaintiff. The fact that part of the momentary use of pepper spray drifted on the Plaintiff does not support an excessive use of force claim. The excessive use of force claim fails to state a claim upon which relief may be granted and is frivolous in that it lacks any basis in law and fact. The claim should be dismissed pursuant to 28 U.S.C. § 1915A(b)(1).

The Court will briefly touch on the Plaintiff's remaining claims even though they were not exhausted. It is initially noted that a plaintiff may not bring a civil rights lawsuit unless he can show an abuse of governmental power that rises to a constitutional level. *Love v. King*, 784 F.2d 708, 712 (5th Cir. 1986); *Williams v. Kelley*, 624 F.2d 695, 697 (5th Cir. 1980), *cert. denied*, 451 U.S. 1019 (1981). A civil rights plaintiff must allege a deprivation of a federally protected right in order to set forth a *prima facie* case. *Maine v. Thiboutot*, 448 U.S. 1 (1980); *Williams v. Treen*, 671 F.2d 892, 900 (5th Cir. 1982). The fact that Michael Unit officials temporarily had a pill window in a covered area outside does not constitute cruel and unusual punishment, even though the Plaintiff had to stand outside in the cold and wind from time to time. This simply does not rise to the level of an Eighth Amendment violation.

The Plaintiff also complained about the waiting area at the infirmary where he and other general population inmates were locked in a large metal cage.  General population inmates have that designation because they have not been a security threat.  The Plaintiff may have felt threatened to some degree by some of the other general population inmates.  It is again noted, however,  that the Plaintiff must show that officials knew of and disregarded an excessive risk to his  health or safety. *Farmer*, 511 U.S. at 837.  The Plaintiff did not allege any facts showing that any of the Defendants has specific knowledge that he faced an excessive risk to his health or safety.  As the October 26, 2004, entry in the classification records noted, the Plaintiff could never say anything more than he was approached and that he could not identify any of the offenders as a source of threats.  The Plaintiff may have felt threatened, but he failed to alleged facts that rise to the level of cruel and unusual punishment.

The Plaintiff also complained that it was hot when a part in the fan in his housing area was broken.  Officials had to replace the part.  The facts as alleged do not show that any of the named Defendants had a culpable mental intent.  He has not shown that anyone was deliberately indifferent to his health.  The claim is frivolous.

Finally, the Plaintiff complained that the mail rules have been changed.  The rules regarding prison mail have been routinely litigated over the last three decades.  Prison authorities may open a prisoner's mail for inspection. *Guajardo v. Estelle*, 580 F.2d 748, 759 (5th Cir. 1978).  However, they may not interfere with a prisoner's right of access to court. *See Bounds v. Smith*, 430 U.S. 817, 821-23 (1977); *Jackson v. Procunier*, 789 F.2d 307, 311-12 (5th Cir. 1986).  Officials traditionally were prohibited from opening legal mail except in the presence of the inmate to whom the letter was addressed. *See Guajardo v. Estelle*, 580 F.2d at 757-59.  However, the Fifth Circuit reanalyzed these rules in light of *Turner v. Safley*, 482 U.S. 78 (1987).  The Fifth Circuit held "that the violation of

11

a prison regulation requiring that a prisoner be present when his incoming legal mail is opened and inspected is not a violation of a prisoner's constitutional rights." *Brewer v. Wilkinson*, 3 F.3d 816, 825 (5th Cir. 1993).  A cognizable claim may exist if the Plaintiff sustains harm, such as by the contents of the letter being censored or destroyed. *Jackson v. Cain*, 864 F.2d at 1244; *Richardson v. McDonnell*, 841 F.2d 120, 122 (5th Cir. 1988).  When the *Guajardo* class action lawsuit regarding mail was ended, it was noted that complaints about opening of special or privileged mail did not amount to a constitutional violation. *Guajardo v. TDCJ*, 363 F.3d 392, 397 (5th Cir. 2004).  The final decision issued in *Guajardo* applies to the Plaintiff, and he may not bring a separate lawsuit trying to relitigate this matter. *See Gillespie v. Crawford*, 858 F.2d 1101, 1103 (5th Cir. 1988); *Oliver v Scott*, 276 F.3d 736, 741 (5th Cir. 2002).  The Plaintiff's unexhausted claims are frivolous and may be dismissed with prejudice pursuant to 28 U.S.C. § 1997e(c).  It is accordingly

**ORDERED** that the Plaintiff's complaints about incidents that occurred at the Darrington Unit are **DISMISSED** without prejudice.  It is further

**ORDERED** that the Plaintiff's remaining claims are **DISMISSED** with prejudice.  All motions not previously ruled on are **DENIED**.

So **ORDERED** and **SIGNED** this **25** day of **September, 2006.**

_____
JUDITH K. GUTHRIE
UNITED STATES MAGISTRATE JUDGE